***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award except for minor modifications; therefore, the Full Commission AFFIRMS the Opinion and Award of Deputy Commissioner Holmes.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
2. Employer-Defendant is self-insured. Carolinas Healthcare System administers workers' compensation for Employer-Defendant. An Employer/Employee relationship existed between Employer-Defendant and Decedent on or about March 1, 1999.
3. Decedent's average weekly wage would yield a compensation rate of $310.00 per week.
4. On March 1, 1999, Decedent was found dead in a medical gas storage room with a black plastic bag over his head.
5. Defendant denied Decedent's wife's claim for death benefits by way of a Form 61.
6. All parties have been correctly designated, there is no question as to misjoinder of the parties, and the parties are subject to the jurisdiction of the North Carolina Industrial Commission.
 ***********
Based on the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. This is a denied claim for death benefits brought by the estranged widow of the deceased employee, Harold Brent Littlefield (hereinafter "Decedent").
2. Decedent was missing sometime between February 28 and March 1, 1999. On the morning of March 1, 1999, decedent was discovered in the gas storage room lying on the floor, head supported by a pillow, with a black plastic bag over his head. Decedent's fingers were clutching the plastic bag to hold it tight over his head.
3. Officer S. A. Whitesal of the Charlotte-Mecklenburg Police Department was the initial investigating officer who took the missing persons report. Although Officer Whitesal did not have a role in the investigation after decedent's body was discovered, he performed much of the initial legwork while decedent was missing.
4. Officer Robert Buening, a homicide detective, was rendered and accepted by the Court as an expert witness in the field of homicide and suicide investigation. Officer Buening has investigated hundreds of deaths, including suicides and homicides, over his career. Officer Buening was called to CMC on March 1, 1999, with a report that a dead body had been discovered in the gas storage room. Officer Buening stepped briefly into the room to ascertain that there was in fact a corpse in the room, then stepped out and had the room blocked off until the medical examiner arrived.
5. Detective Buening observed a white male (identified as decedent) lying on his side on the floor as depicted in the photographs taken at the scene. Decedent had a black plastic bag pulled over his head and his right hand was holding the bag tightly around the base of his throat. Officer Buening testified there was actually material from the bag intertwined in decedent's fingers. Decedent's body was identified by way of a nametag contained on his person.
6. Officer Buening determined decedent's death to be the result of suicide. Officer Buening testified there were no signs of struggle of any kind and decedent's features were completely at peace, suggesting that he was not struggling to remove the bag in the moments prior to his death. Officer Buening also testified there were no unusual marks, cuts, or bruising on decedent's neck area or other parts of his body. Finally, Officer Buening added that decedent was wearing his glasses, although they were somewhat askew due to the position in which he was lying on the floor. Although there was some blood on the floor, Officer Buening testified the blood came from decedent's lungs as he asphyxiated. The cause of decedent's death was listed as asphyxiation.
7. Officer Buening testified it is not possible this was a murder staged in such a way as to appear a suicide.
8. Don Bryant, the medical examiner's investigator assigned to this case, was also accepted by the Court as an expert witness. Like Officer Buening, Mr. Bryant has investigated hundreds of suicides and homicides over the course of his career. Mr. Bryant assisted Officer Buening in the examination of decedent's body. Mr. Bryant corroborated Officer Buening's description of decedent's body and the position in which it lay in the gas storage room.
9. In conducting his investigation, Mr. Bryant spoke with decedent's mother who stated her son was depressed.
10. Mr. Bryant testified that it would have been physically impossible to stage a suicide in the observed manner. Specifically, decedent's arm and hand were gripping the trash bag over his head when he was found. Although it is possible to rearrange a body shortly after death, and before lividity sets in, it is not possible to simulate the flexion involved in order to make a fist.
11. Plaintiff did not call any witnesses from the Police Department, or anyone who actually observed decedent's body. Rather, plaintiff called a number of decedent's friends and co-workers to give testimony regarding their impressions of decedent's mental state. None of these witnesses were present at the scene of decedent's death. Furthermore, none of plaintiff's witnesses observed the position of decedent's body or his hand gripping the trash bag.
12. None of plaintiff's witnesses offered anything other than speculation or conjecture. A common theme of plaintiff's witnesses was that decedent would never commit suicide and leave his two boys with his estranged wife. Plaintiff's witnesses testified that decedent was "upbeat" and outgoing on the night he became missing. There was testimony that decedent's watch was missing when his body was found. There was further testimony that decedent wore his watch on a regular basis.
13. The overwhelming credible evidence in this case suggests decedent's death was the result of a suicide. The Full Commission attaches great weight to the testimony of the officers who investigated decedent's death. Less weight is assigned to the testimony of lay witnesses who expressed surprise at decedent's suicide, but were not present at the scene and did not observe the clear physical evidence.
14. When personal effects of decedent were returned to his wife, a gold watch was missing. The attorney for plaintiff stated that their theory is that someone murdered decedent and took his watch. However, there is no physical evidence that decedent was murdered. There was no indication of any struggle or foul play concerning decedent's death.
15. Decedent and his estranged wife were not living together at the time of his death.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff has not proven that decedent's death was a proximate result of a compensable injury by accident. N.C.G.S. § 97-38.
2. The greater weight of evidence suggests that decedent's death was proximately caused by an intention to harm or kill himself, barring any claim for death benefits. N.C.G.S. § 97-12.
3. Even if decedent's death was compensable, plaintiff in this action has not proved that she is a widow as defined by the North Carolina Workers' Compensation Act. N.C.G.S. § 97-2(14). The rights of decedent's two minor children are not affected by this Opinion and Award.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commissions affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Plaintiff's claim under the law must be and is hereby DENIED.
2. Each side shall pay its own costs.
This the ___ day of January 2003.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER